## Banks *vs.* Metcalfe,

This was an appeal to the Court of Sessions from the decision made by Mr. Hedden, Police Justice, in the matter of Metcalfe, an apprentice, on the complaint of Banks, his master.

In 1818, Metcalfe was bound by his mother, before the Police Magistrate, to Banks, as an apprentice to learn the trade of a cabinet-maker, to serve until the age of twenty-

NEW-YORK.

Banks
*vs.*
Metcalfe.

*the apprentice is not conclusive, notwithstanding the statute declares it shall be taken to be his true age, it is only pri-ma facie evidence and his true age may be shown by extrinsic testimony. No matter by what form or ceremony he may have been bound, he is a free man, and no longer under the control of his master at 21 years of age.*

one years; and in the indentures his age was stated to be sixteen years, although in fact he was *eighteen.* Having served his master faithfully until he was twenty-two years and upwards, Metcalfe gave notice to his master of his age, and demanded his indentures, and his freedom. The master refused, and Metcalfe quit his service, assigning his age as the cause. The master applied to the Police Office, and Metcalfe was summoned to answer the charge of running away from his master. Here Metcalfe in defence proved his age to be past twenty-two years; and also proved that the mother and the master had combined to insert the age two years back (for the purpose of binding the boy beyond his minority,) for the master's interest, the master having made objection to his advanced age.* On these facts, Mr. Hedden, the Police Justice, dismissed the master's application. From this decision the master appealed to the Sessions, and on the last day of term the case was tried.

*Emmet* and *Selden,* for the prosecution; and *Fay,* for the defendant.

It was contended for by the master, that by the 6th section of the Statute concerning apprentices, "*the age of the apprentice shall be taken to be his true age without any further proof thereof.*" That the apprentice and his mother having signed the indentures, and in them having fixed the age, they were both precluded, by their deed, and by the law, from setting up a different age against the validity of the indenture. That the master had just taught the boy his trade, and now, as his services began to be valuable, he fled from his employment under a pretence contrary to the fact admitted by his deed. They objected to any evidence whatever. Mr. Fay, in reply, said, the

statute, if construed as contended for by the prosecution, might, by a fraudulent connivance between a parent and a master, bind a person till he was thirty years of age. That the meaning of the statute must be, not that the indenture shall be conclusive evidence of the age against the minor, but only *prima facie evidence* to satisfy the justice at the time of executing the indentures, and that to save him the trouble of finding *"further proof"*—and that this part of the statute was applicable only to poor apprentices, who, without parents, were bound by the magistrate, and not applicable to the case in question.

The Recorder, after consulting his associates on the bench, decided, that evidence of the true age might be admitted ; and that upon a contrary principle, an American citizen might be fraudulently bound, and the spectacle might occur of an apprentice of thirty years, receiving the punishment of whipping, from the hands of his master, for disobedience of orders. The Legislature have fixed the meaning as to what sort of evidence the indenture shall be, of the age set forth in it, as will appear by reference to the statute, for the relief of insolvent debtors. In that case, the statute declares, that the discharge shall be conclusive evidence of the facts therein contained. In the statute concerning apprentices, the word *"conclusive"* is left out, which would not have been the case, if the Legislature had intended that the age specified in the indentures should be conclusive evidence of the fact.

The godmother of the defendant, and the defendant himself, were then offered as witnesses to prove the defendant's age.

Mr. *Emmet* objected to these being sworn, on the

ground that the mother was better evidence, and might be produced—and that the defendant, aside from his interest to misrepresent his age, could not be supposed to know his age, except from *hearsay*.

Mr. *Fay*, in reply, asserted that the proceeding of the defence was in opposition to the mother's act, and to prove that she had fraudulently misrepresented the defendant's age, and had conspired with the master to cheat the defendant of his freedom. That the godmother, who remembered the birth of the child, who stood for him at his christening, who had the certificate of his parish register was, in opposition to the mother, the best evidence that could be produced. That the defendant was the next best evidence; and his knowledge of his age, and of his identity, was acquired not only by hearsay, but by experience, comparison, observation, and all the evidence which constitutes knowedge. That Mr. *Emmet* and Mr. *Selden* did not know that they were themselves, but by hearsay; and yet they were the best evidence that could be adduced to prove that fact, in case it should happen to be questioned.

The Court inquired if the mother was in Court, when it appeared that she was absent in the northern part of this State, and her residence unknown to the defendant.

The recorder decided that the godmother might be received as evidence.

Mrs. Andrews, the godmother being sworn, said she knew the defendant—was at his birth and christening; that the was born in December, 1800, in Dublin. On being cross-examined, she said that she left Ireland in 1802; and the defendant, after living two years with her'

remained behind with his mother, and did not come to NEW-YORK,
this country until 1818. "How do you know he is the Banks
same boy?" said Mr. Emmet. The witness said she be- *vs.*
lieved him to be, but had no particular mark by which to Metcalfe.
distinguish him. She was confident he was the same ; he
resembled his mother. His name was the same. The
mother had always told her he was the same. He was
the oldest boy of the family ; and his lips and eyes, and
manner of speaking are such, that I shonld know him for
his mother's son any where.

Mr. Recorder. Are you convinced, beyond all doubt,
that he is your god-son ?

Witness. Yes, I am, sir, and can swear it.

Recorder. And you say he was 22 years of age last
December ?

Witness. Yes, sir, I know it.

Metcalfe, the defendant, was then sworn, and testified,
that at the time of executing the indentures, the master
was informed of his true age, and agreed, with the mother,
to date his age back for two years, and that his present
age was 22 years and upwards.

After the Counsel had closed their arguments on both
sides, Mr. Recorder said, there can be no doubt that at
the moment a boy arrives at the age of 21 years, all re-
lationship between him (as apprentice) and his master in-
stantly ceases ; no matter by what form or ceremony he
may have been bound. As the Court are convinced that
this young man is 22 years of age, he directed the clerk
to order " that the complaint be dismissed—and that the
defendant is a free man, no longer under the control of Mr.
Banks as apprentice."—*Anon.*

NEW-YORK,

Banks
*vs.*
Metcalfe.

*Note.—Apprentices (from *apprendre* to learn) are a species of servant usually bound for a term of years to serve a master, who for said service, agrees by indenture, to instruct them in a trade. The apprentices may be discharged from those indentures, on reasonable cause, at the request of themselves or masters, at the quarter Sessions, or by one justice, with appeal to the Sessions. Laws of New York, vol. 1, p. 138.

If an apprentice run away from his master, he is obliged to serve out his time of absence, or make satisfaction therefor, at any time within three years after the expiration of the indenture of apprenticeship, either by serving double the time of obsence, or paying for the loss the master may sustain by such absence, except in cases where the master receives a sum of money with the apprentice, to learn his trade. Idem. p. 139. For any misdemeanor, miscarriage, or misbehavior, apprentices may be committed on their maser's oath thereto, before a justice, to the house of correction, or the county jail, for any time not exceeding one month, to hard labor. Idem.

An apprentice, who, at seventeen, was bound by indenture, in England, (which stated her at fourteen years of age,) for seven years, is entitled to be discharged at twenty-one, being brought up *habeas corpus*. *Ex parte*, M. A. Davis. 5 Term Rep. 715.

The sessions may discharge an apprentice by original order; and order the money paid with apprentice to be returned; The King v. Johnston, 1 Salkeld, 68—and so may justices. Idem, 67.

An apprentice cannot be assigned by the master, his trust being merely personal. 1 Mass. Rep. 172.

Where an apprentice is employed by a person, without the knowledge or consent of his master, the master is entitled to all his earnings, even though the person who employs him does not know that he is an apprentice. 6 Johns. Rep. 274.

An apprentice ran away from his master in New York, entered on board a ship, signed articles engaging to perform the whole voyage, and in,

case of desertion or embezzlement, to forfeit his wages ; held that the master could recover his earnings, while he was on board, deducting nothing for wages advanced to the apprentice, although neither the master nor the owners knew of his being an apprentice. Idem. But where apprentices are salvors, their masters are not entitled to their share of salvage, but it shall be paid to the apprentices themselves.— Mason and others v. Blaireau, 2 Cranch, 240.

NEW-YORK,

Banks
vs.
Metcalfe,

And where a hired servant leaves the employ of the master, the new employer is not liable without notice. The master in such case, has a remedy against the servant for damages. James v. Le Roy, Anthon's Ni Prius, 118.

☞ This case was politely furnished the Editor by Mr. Fay.